# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **K.T., R.D., and KAITLIN BAILEY,** | **CIVIL ACTION** |
| *Plaintiffs,* | |
| **v.** | **NO. 23-02858** |
| **A PLACE FOR ROVER and ANTOINE** | **NO. 23-02859** |
| **SMITH** | **NO. 23-02860** |
| *Defendants.* | |

## MEMORANDUM RE: MOTION TO COMPEL ARBITRATION AND TO STAY

**Baylson, J.**                                               **October 31, 2023**

These civil actions arise from events that took place beginning in late 2020 or early 2021. Plaintiffs[1] have brought several claims, discussed below, against Defendants A Place for Rover, d/b/a Rover ("Rover") and Antoine Smith.  Defendant Rover moves to compel arbitration and to stay the case pending arbitration.  For the following reasons, the Motion will be granted.

## I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Unless otherwise noted, the following facts are taken from the Complaint and are construed in the light most favorable to the non-movants, Plaintiffs.  Defendant Rover is a company that provides in-home pet-care services.  See ECF No. 1, Ex. A (Compl.). Defendant

---

[1] Three Plaintiffs, K.T., R.D. and Bailey, filed separate suits against both Defendants Rover and Smith, with overlapping issues. This Court consolidated these cases for pretrial purposes on September 18, 2023. ECF No. 28.  For consistency, all ECF citations refer to Plaintiff Bailey's docket, 23-2860, unless otherwise specified.

Rover hosts a website and mobile application where pet owners interact with, message, and hire pet-care providers.  Id. ¶ 10.  Plaintiffs are three women who provided in-home pet-care services for pet owner Defendant Smith.  Defendant Smith contacted Plaintiffs, seeking pet-care services, through Defendant Rover.  Id. ¶ 92.  Defendant Smith used hidden cameras disguised as clocks, Bluetooth speakers, and other items, to secretly film Plaintiffs in Defendant Smith's home while they showered, used the bathroom, slept, and were in various stages of undress.  Id. ¶ 7.  Plaintiffs allege that Defendant Rover created an environment in which individuals like Defendant Smith could easily locate, contact, and prey upon young women. Id. ¶ 26.  They also assert that Defendant Rover was aware of the use of hidden cameras by its pet owners and chose not to take preventative measures.  Id. ¶ 45, 98.  Plaintiffs contend that Defendant Smith's Rover account was previously reported for inappropriate conduct, but Defendant Rover took no steps to remove Defendant Smith from its platform after the report.  Id. ¶ 64.

Plaintiffs filed Complaints against both Defendant Smith and Defendant Rover in the Philadelphia Court of Common Pleas on June 6, 2023.  In their Complaints, Plaintiffs allege the following claims:

1. Violation of the Pennsylvania Human Trafficking Statute under 18 Pa. Const. Stat. Ann. § 3051 against both Defendants (Count I);

2. Violation of 18 P.A. C.S. § 5703 Interception, Disclosure or Use of Wire Electronic or Oral Communications against Defendant Smith (Count II);

3. Intentional Infliction of Emotional Distress against Defendant Smith (Count III);

4. Vicarious liability for violation of 18 P.A. C.S. § 5703 against Defendant Rover (Count IV);

5. Negligence against Defendant Rover (Count V); and

6.   Negligent Infliction of Emotional Distress against Defendant Rover (Count VI)

Compl. at 28–35.

Defendant Rover removed the three cases to federal court in July 2023.  ECF No. 1.
Plaintiffs filed a motion to remand, which this Court denied.  See ECF No. 32.  In August 2023,
Defendant Rover filed a Motion to Compel Arbitration and to stay all proceedings pending
arbitration.  ECF No. 15.  Plaintiffs opposed the motion.  ECF No. 21.  Defendant Rover then
filed a Reply in support of its Motion to Compel Arbitration on October 2, 2023.  ECF No. 30.

The arbitration agreement between Plaintiff R.D. and Defendant Rover provides, in
relevant part, as follows:

> Unless you opt out of the Arbitration Agreement in accordance with the procedure
> described in Section 17.9 below, you agree that any and all Claims (other than Excluded
> Claims) will be resolved exclusively on an individual basis through final and binding
> arbitration, rather than in a court, in accordance with this Arbitration Agreement, and
> your rights in connection with all Claims (other than Excluded Claims) will be
> determined by a neutral arbitrator, not by a judge or jury.

ECF No. 15, Ex. A, "Terms of Service," ¶ 17.1.

The arbitration agreement between Defendant Rover and Plaintiffs K.T. and Bailey and

Defendant Rover similarly provides, in relevant part, as follows:

> Unless you opt out of the Arbitration Agreement in accordance with the procedure
> described in Section 17.9 below, you and Rover (together, the "Parties") agree that any
> and all disputes or claims that arise between you and Rover relating to the Rover Service,
> interactions with others on the Rover Service, and/or these Terms (including any alleged
> breach of these Terms) (collectively, "Claims"), except for Excluded Claims (defined in
> the following sentence), will be resolved as set forth in this Arbitration Agreement.

ECF No. 15, Ex. B, "Terms of Service," ¶ 17.1. [2]

---

[2] Defendant Rover presents evidence that none of the three Plaintiffs opted out of the Arbitration
Agreement in accordance with the procedure described in Section 17.9, see ECF No. 15, Kimmey Decl. ¶
26, which Plaintiffs do not dispute in their Response in Opposition.  Defendant Rover contends that the
"Excluded Claims" referenced in Section 17.9 of the Arbitration Agreement are not relevant for purposes
of this analysis, and Plaintiffs do not allege that they apply.

## II.   LEGAL STANDARD

### A.  Standard for Motion to Compel Arbitration

The Third Circuit has set forth the following explanation regarding the legal standard for

motions to compel arbitration:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.  But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.

Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013)

(internal citations and quotations omitted).

The fact that a Plaintiff's complaint "makes no mention" of an arbitration agreement

"does not foreclose operation of a Rule 12(b)(6) standard."  Benedict v. Guess, Inc., 2021 WL

37619 at *4 (E.D.Pa. Jan. 5, 2021); quoting Sorathia v. Fidato Partners, LLC, 2020 WL 5121473,

at *3 (E.D.Pa. Aug. 31, 2020).  "Precluding review of a complaint under the Rule 12(b)(6)

standard simply because a plaintiff has avoided reference to an existing arbitration agreement

would frustrate the purpose of the FAA: to facilitate expedited resolution of disputes where the

parties to a contract have opted for arbitration."  Id. (considering the arbitration agreement

attached to Defendants' motion notwithstanding the absence of any reference to the agreement in

Plaintiff's Complaint); see also Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n, 2019 WL

2077731, at *3 (E.D.Pa. May 10, 2019) ("We are not compelled to apply a summary judgment

standard because Ms. Asberry-Jones failed to mention the Arbitration Agreement in her

complaint.  Indeed, we cannot envision a plaintiff choosing to file a complaint in federal court

will affirmatively plead the existence of an arbitration provision.  The purposes of the Act would

4

be frustrated 'if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints.'" (quoting Hewitt v. Rose Grp., 2016 WL 2893350, at *2 n.1 (E.D.Pa. Mar. 21, 2016))).

      Consistent with the above approach, this Court will consider the arbitration agreement attached to Defendant Rover's Motion to Compel Arbitration even though the arbitration agreement is not directly referenced in Plaintiffs' Complaints.  Consideration of the arbitration agreement is further warranted since Plaintiffs' Complaints make reference to Defendant Rover's Terms of Service in which the arbitration agreement is contained.  See Compl. ¶¶34, 47.

    **B.  Federal Arbitration Act and the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act**

      "The Federal Arbitration Act (FAA) reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" In re Remicade (Direct Purchaser) Antitrust Litig., 938 F.3d 515, 519 (3d Cir. 2019) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).  The FAA requires that the Court, "upon being satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration" under an arbitration agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…"  9 U.S.C. § 3.  "[I]n deciding whether a party may be compelled to arbitrate under the FAA," the Court must "first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d

Cir. 2014), (quoting <u>Century Indem. Co. v. Certain Underwriters at Lloyd's, London</u>, 584 F.3d 513, 527 (3d Cir. 2009)).

The "FAA's mandates in support of its 'liberal federal policy favoring arbitration agreements' may however be 'overridden by a contrary congressional command.'" <u>Johnson v. Everyrealm, Inc.</u>, 2023 WL 2216173, at *17 (S.D.N.Y. Feb. 24, 2023) (quoting <u>CompuCredit Corp. v. Greenwood,</u> 565 U.S. 95, 98, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012)).  Congress carved out sexual assault and sexual harassment claims from the FFA when it passed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA) in 2021.  The EFAA provides that:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute…no predispute arbitration agreement…shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).  The EFAA applies only to any dispute or claim that arises or accrues on or after the date of the enactment of the Act and does not have retroactive effect.  <u>Johnson v. Everyrealm, Inc.</u>, 2023 WL 2216173 at *10.  The EFAA was enacted on March 3, 2022.  <u>Id.</u> Under the EFAA, a "sexual harassment dispute" refers "to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).   Whether the EFAA applies to a dispute is a question for the Court rather than an arbitrator.  9 U.S.C. § 402(b).

## III.   DISCUSSION

### A.  Parties' Contentions

The crux of this case is whether the EFAA renders Defendant Rover's arbitration agreement unenforceable.  Defendant Rover argues that each Plaintiff agreed to Rover's Terms

of Service, which contain an arbitration agreement, when they signed up with Rover to advertise and offer their services as pet care providers.  ECF No. 15 at 5.  The arbitration agreement requires Plaintiffs to arbitrate "any and all disputes or claims that arise between [her] and Rover" relating to Defendant Rover's service, her "interactions with others on the Rover service," and the Terms of Service.  Id.  Defendant Rover asks this Court to compel arbitration and stay the entire case, including the claims against Defendant Smith, arguing that such stay is proper because Plaintiffs allege that Defendant Rover is liable for Defendant Smith's conduct, and any decisions in arbitration about that conduct could lead to inconsistent results absent a stay.  Id.

In response, Plaintiffs argue that Defendant Rover ignores the EFAA, discussed above, and that this federal statute applies directly to Plaintiffs' claims.  ECF No. 21 at 4.  Plaintiffs assert that their claims constitute a sexual harassment dispute under the EFAA, stating that the "Complaints set forth ample factual allegations of sexual harassment" and listing the relevant factual allegations.  Id. at 5-6.  Plaintiffs assert that Defendant Rover's motion should be denied because the EFAA invalidates Defendant Rover's arbitration clause and Plaintiffs elected to void any applicable arbitration agreements by filing suit in state court.

In its Reply, Defendant Rover argues that (1) Plaintiffs do not allege any claims for "sexual harassment" within the meaning of the EFAA, (2) Plaintiffs have failed to plausibly allege claims they suggest might be recognized as "sexual harassment claims" where the EFAA requires that claims of sexual harassment be plausible under Rule 12(b)(6), and (3) the EFAA does not apply because Plaintiffs assented to arbitration after filing their complaints.  ECF No. 30.

**B.  Whether the Arbitration Agreement is Valid and Enforceable**

As a threshold matter, this Court must determine whether there is an arbitration agreement that applies to Plaintiffs' claims.  The arbitration agreement in question, provided in relevant part above, requires Plaintiffs to arbitrate "any and all disputes or claims that arise between [her] and Rover" relating to Defendant Rover's service, her "interactions with others on the Rover service," and the Terms of Service.  Id.  Plaintiffs do not appear to dispute that they agreed to Defendant Rover's Terms of Service, which includes the arbitration agreement, when signing up for their Rover accounts. Rather, they ask this Court to find that the EFAA invalidates the arbitration agreement.  In consideration of the arbitration agreement attached to Defendant's Motion, ECF No. 15, and in the absence of any evidence to the contrary, this Court finds that there is an arbitration agreement in this case that applies to Plaintiffs' claims.

The next question is whether the EFAA invalidates the arbitration agreement.  Under guiding principles of statutory interpretation, where the text of a statute is "unambiguous, the statute should be enforced as written and only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language."  McMaster v. Eastern Armored Servs. Inc., 780 F.3d 167, 170 (3rd Cir. 2015), quoting Murphy v. Millennium Radio Grp. LLC, 650 F.3d 295, 302 (3d Cir. 2011).  "[C]ourts should construe statutory language to avoid interpretations that would render any phrase superfluous."  Ndayshimiye v. Att'y Gen. of U.S., 557 F.3d 124, 131 (3d Cir. 2009); citing United States v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005).

Under the EFAA, "sexual harassment dispute" is defined as "conduct that is alleged to constitute sexual harassment ***under applicable Federal, Tribal, or State law***."  9 U.S.C. § 401(4) (emphasis added).  Plaintiffs argue, without citing sufficient legal support, that "the EFAA

broadly applies to nearly all matters that include allegations of sexual assault or harassment."

<u>See</u> ECF No. 21 at 10.  Defendant Rover counters that Plaintiffs do not allege any claim for

"sexual harassment" within the meaning of the statute because they do not point to a violation of

an applicable "Federal, Tribal, or State law."  The District Court's analysis in <u>Yost v.</u>

<u>Everyrealm, Inc.</u>, though non-binding authority, is instructive:

> The operative text here is in EFAA sections 402(a) and 401(4).  Section 402(a) provides that "at the election of the person alleging conduct constituting a sexual harassment dispute," no pre-dispute arbitration agreement shall be valid or enforceable "with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."  9 U.S.C. § 402(a).  Section 401(4), in turn, defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  <u>Id.</u>  §401(4).

> This statutory language requires some parsing.  The initial clause of § 402(a), which serves to explain which party may invoke the EFAA, refers to the "person alleging conduct constituting a sexual harassment dispute."  Read in isolation, this text could support that a plaintiff, merely by describing conduct in the vernacular as "sexual harassment," could neutralize an arbitration agreement, even if the plaintiff did not claim that such conduct violated the law.

> Section 401(4), however, precludes that result.  It does so by requiring that the dispute relate to "conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," it thus requires the plaintiff to assert that the conduct violated such a law.  It does so by modifying the term "alleged" within the qualifying words "to constitute sexual harassment under applicable Federal, Tribal, or State law."  Thus, although the term "alleged" commonly refers to an allegation of fact, as used in Section 401(4), the term adds a legal dimension to the required allegation.  And Section 401(4)'s concluding clause identifies the legal measuring stick.  The conduct must have been "alleged to constitute sexual harassment <u>under applicable Federal, Tribal, or State law</u>."  Congress's decision to add those qualifying words is significant…This plain language makes the EFAA inapplicable where there has not been an allegation that such conduct violated a law prohibiting sexual harassment.

> 2023 WL 2224450, at *16 (S.D.N.Y. Feb. 24, 2023).

While the alleged conduct is certainly reprehensible, this Court agrees with Defendant

Rover that Plaintiffs do not allege a claim for "sexual harassment" as the term is defined in the

EFAA.  Here, Plaintiffs assert claims for violations of the Pennsylvania Human Trafficking

Statute (PHTS), 8 Pa. C.S. § 3051, and the Commonwealth's wiretapping statute, 18 Pa. C.S. § 5703. Neither the PHTS nor the wiretapping statute is a law under which the alleged conduct constitutes "sexual harassment." The PHTS applies to an individual who is a "victim of human trafficking" or a "victim of the sex trade." § 3051. Plaintiffs do not contend that these characterizations apply here. The wiretapping statute does not invoke anything akin to "sexual harassment" in the first instance. Thus, Plaintiffs' allegations of conduct do not meet the definition of "sexual harassment dispute" under the EFAA and the EFAA does not apply to bar enforceability of the arbitration agreement.[3]

### C. Stay Pending Arbitration

This Court will stay the claims against Defendant Rover pending arbitration. See 9 U.S.C. § 3.[4] Defendant Rover argues that that this Court should also stay the claims against Defendant Smith, in addition to those against Defendant Rover, because any decisions about Defendant Smith's conduct in arbitration could lead to inconsistent results unless this Court orders a stay. This Court agrees that it is appropriate to stay Plaintiffs' claims against Defendant Smith pending the outcome of arbitration between Plaintiffs and Defendant Rover. The stay as to Defendant Smith assumes that the arbitration will take place promptly, and if not, Plaintiffs may seek revision of the stay as to Defendant Smith. See Just B Method, LLC v. BSCPR, LP, 2014 WL 5285634, at *12 (E.D.Pa. Oct. 14, 2014) ("[I]n the interest of preserving judicial

---

[3] Because this Court finds that the EFAA does not apply where Plaintiffs do not allege any claims for "sexual harassment" within the meaning of the EFAA, it need not address Defendant Rover's remaining arguments regarding the inapplicability of the EFAA.

[4] 9 U.S.C. § 3 provides, "[i]f any suit or proceeding be brought in any of the courts of the United States upon an issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

economy, this Court finds it appropriate to stay Plaintiffs' claims against Defendants Centerpoint and Foley pending the outcome of arbitration between Plaintiffs and the Bellevue Defendants."); see also Clientron Corp. v. Devon IT, Inc., 2014 WL 940406, at *3, slip op. (E.D.Pa. Mar. 10, 2014) ("As a general matter a court's 'power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'") (citing Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and to Stay is granted.  An appropriate order follows.


O:\Rachel.2023\Rover Cases\Memo re Motion to Compel Arbitration.docx